10-1451-cv
Montefiore Med. Ctr. v. Teamsters Local 272

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2010

(Argued: Tuesday, February 15, 2011                    Decided: April 21, 2011)

Docket No. 10-1451-cv

MONTEFIORE MEDICAL CENTER,

*Plaintiff-Appellant*,

v.

TEAMSTERS LOCAL 272, FRED ALSTON, in his capacity as
President of Teamsters Local 272, LOCAL 272 WELFARE
FUND, MARK GOODMAN, in his capacity as Fund Manager
of Local 272 Welfare Fund,

*Defendants-Appellees*.

Before: CABRANES, POOLER, and CHIN, *Circuit Judges*:

Appeal from a November 11, 2009 Opinion & Order of the United States District Court for the Southern District of New York (Harold Baer, Jr., *Judge*). The question presented is whether a healthcare provider's breach of contract and quasi-contract claims against an ERISA benefit plan are completely preempted by federal law under the two-pronged test for ERISA preemption established in *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). We hold: (1) an "in-network" health care provider may receive a valid assignment of rights from an ERISA plan beneficiary pursuant to ERISA § 502(a)(1)(B); (2) where a provider's claim involves the <u>right to payment</u> and not simply the <u>amount or execution of payment</u>—that is, where the claim principally implicates coverage and benefit determinations as set forth by the terms of the ERISA benefit plan, and not simply the

contractually correct payment amount or the proper execution of the monetary transfer—that claim

constitutes a colorable claim for benefits pursuant to ERISA § 502(a)(1)(B); and (3) in the instant

case, at least some of plaintiff's claims for reimbursement are completely preempted by federal law;

furthermore, the remaining state-law claims are properly subject to the exercise of the District

Court's supplemental jurisdiction.

Affirmed and remanded for further proceedings consistent with this opinion.

JOHN G. MARTIN (Michael J. Keane, *on the brief*), Garfunkel
Wild, P.C., Great Neck, NY, *for plaintiff-appellant.*

JANE LAUER BARKER, Pitta & Giblin LLP, New York, NY,
*for defendants-appellees.*

JOSÉ A. CABRANES, *Circuit Judge:*

This case is yet another act in the all-too-familiar drama involving patients, their health care

providers, and their health care benefit plans. The question presented is whether a health care

provider's breach of contract and quasi-contract claims against a benefit plan established pursuant to

the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., are

completely preempted by federal law under the two-pronged test for ERISA preemption established

in *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). We hold: (1) an "in-network" health care

provider may receive a valid assignment of rights from an ERISA plan beneficiary pursuant to

ERISA § 502(a)(1)(B),[1] the provision setting forth ERISA's civil enforcement scheme; (2) where a

---

[1] Section 502(a)(1)(B) provides, in relevant part:

A civil action may be brought --

(1) by a participant or beneficiary --

. . .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under

provider's claim involves the <u>right to payment</u> and not simply the <u>amount or execution of payment</u>[2]—that is, where the claim implicates coverage and benefit determinations as set forth by the terms of the ERISA benefit plan, and not simply the contractually correct payment amount or the proper execution of the monetary transfer[3]—that claim constitutes a colorable claim for benefits pursuant to ERISA § 502(a)(1)(B); and (3) in the instant case, at least some of plaintiff's claims for reimbursement are completely preempted by federal law; furthermore, the remaining state-law claims are properly subject to the District Court's supplemental jurisdiction.

## I. BACKGROUND

Plaintiff-appellant Montefiore Medical Center ("Montefiore" or "plaintiff") is a non-profit hospital in the Bronx, New York. Between May 2003 and August 2008, Montefiore provided medical services to beneficiaries of defendant-appellee Local 272 Welfare Fund ("the Fund"), an employee benefit plan governed by ERISA. The Fund provides health care coverage to individuals who work in "covered employment," as defined by the Fund, and to their eligible dependents (collectively, the "beneficiaries" or "members" of the Fund). The coverage that the Fund offers is paid directly from contributions it receives from employers, who are obliged by their collective bargaining agreements with defendant-appellee Teamsters Local 272 ("the Union") to make

---

the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]

29 U.S.C. § 1132(a).

[2]As will be discussed *post*, exact provider reimbursement amounts and terms regarding the execution of payment to providers are not usually (or, to our knowledge, ever) explicitly set forth in an ERISA benefit plan. We acknowledge, however, that a hypothetical future case may arise in which these terms are in fact provided by the ERISA benefit plan. Our holding regarding the nature of claims involving the amount or execution of payment would not control that hypothetical case, as presumably it would be possible under those circumstances to raise a colorable claim for benefits related solely to the amount or execution of payment.

[3] Claims involving the proper execution of the monetary transfer include, among other things, claims regarding the timeliness of payment and claims regarding the proper form of payment.

3

specified contributions to the Fund on behalf of their covered employees. As required by ERISA and U.S. Department of Labor regulations, the Fund's Plan Description ("the Plan") sets forth the eligibility requirements for coverage, the nature of benefits provided, limitations on those benefits, services covered, and the procedures for claiming benefits and appealing claim denials.

Under the Plan, beneficiaries may obtain medical services in one of two ways. First, they may visit a health care provider who is in the network of providers with whom the Fund has specially contracted to provide services to its members (an "in-network" provider). Second, beneficiaries may visit a health care provider who is not in the Fund's network (an "out-of-network" provider). When Fund members obtain services from an in-network provider, they pay a small co-payment or co-insurance fee or pay nothing at all, and the Fund reimburses the remaining cost for services directly to the provider. When Fund members obtain services from an out-of-network provider, the member is responsible for paying the provider himself, and thereafter may seek reimbursement for covered services from the Fund.

The Plan generally sets forth the beneficiary's co-payments, co-insurance, and other rates of payment, but it does not establish a rate or schedule at which in-network or out-of-network providers will be reimbursed by the Plan. For example, the Plan provides that a beneficiary is responsible for paying a 10% co-insurance fee for maternity care, but it does not establish a ceiling or other limitation on the fee that a provider of maternity care may charge in order to qualify for reimbursement of the remaining cost. These types of limitations are usually set by separate agreements between providers and their Preferred Provider Organizations ("PPOs"),[4] or between PPOs and the ERISA benefit plan, as explained below.

---

[4] A Preferred Provider Organization is "an entity that contracts with doctors, hospitals, and other health care providers to arrange discounted payments for services for the PPO's customers." *United States v. Graf*, 610 F.3d 1148, 1154 (9th Cir. 2010). In other words, health care providers in a PPO's "network" agree to charge discounted rates for their services, and, in exchange, the insurance plans affiliated with the PPO encourage their members (typically by discounting the member's own payment obligations) to patronize providers within the network.

At all relevant times, Montefiore was an in-network provider of the Plan by virtue of its membership in two PPOs. Montefiore contracted with (1) Horizon Healthcare Insurance Company of New York ("Horizon"), from April 2003 until January 1, 2007, and (2) Preferred Choice Management Systems, Inc., d/b/a MagnaCare ("MagnaCare"), from January 1, 2007 through March 11, 2009 (the date Montefiore filed its complaint in this action). These PPOs entered into agreements with the Fund to provide eligible Plan beneficiaries with access to the PPOs' participating hospitals, including Montefiore.

Montefiore and the other providers, in turn, entered into agreements with the PPOs to provide health care services to beneficiaries of the Plan at agreed-upon reimbursement rates, which rates were typically discounted from the providers' usual and customary rates. The Fund's contracts with Horizon and MagnaCare established the specific rates and terms under which the Fund would reimburse the providers for services. These contracts also included many cross-references to the terms of the beneficiaries' benefit agreement with the Fund, *i.e.*, the Plan.[5]

On March 10, 2009, Montefiore filed a complaint against defendants-appellees Teamsters Local 272 et al. ("defendants") in New York state court seeking payment for over $1 million in medical services provided to Plan beneficiaries that the Fund had allegedly failed to reimburse. On its face, the complaint alleged, *inter alia*, state-law claims for breach of contract and unjust enrichment. On March 31, 2009, defendants removed the action to the District Court, alleging that the claims fell within the civil enforcement provisions of ERISA and were therefore completely preempted by federal law. *See* 29 U.S.C. § 1132(a). On June 29, 2009, Montefiore moved to remand

---

[5] To summarize: Montefiore contracted directly with the PPOs (Horizon and MagnaCare); the PPOs contracted directly with the Fund; and the Fund (via the Plan) contracted directly with the Plan beneficiaries, who, in turn, became patients at Montefiore. *See* Appendix A. Accordingly, Montefiore has a relationship with the Fund that sounds in contract law, but it does not contract directly with the Fund. At oral argument the parties explained that this type of arrangement between providers, PPOs, and insurance plans is common in the health insurance industry.

the case to state court.[6]

On November 11, 2009, the District Court issued its Opinion & Order denying plaintiff's motion to remand to the state court and holding, pursuant to the Supreme Court's decision in *Davila*, that (1) Montefiore had "standing as an assignee of the Plan's participants and beneficiaries to bring a claim under [the civil enforcement provision of] ERISA," and that (2) "there [wa]s no independent duty" implicated by defendants' actions. Accordingly, the District Court concluded that Montefiore's claims were completely preempted by ERISA and removal was proper. Observing that "the Second Circuit has not yet determined whether an in-network provider such as Montefiore has standing under ERISA," the District Court *sua sponte* certified its order for interlocutory appeal.

This appeal followed.

## II. STANDARD OF REVIEW

A party seeking removal bears the burden of showing that federal jurisdiction is proper. *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004). A civil claim filed in state court can only be removed to federal court if the district court would have had original jurisdiction to hear the claim. *See* 28 U.S.C. § 1441(a). Under the "well-pleaded complaint rule," federal subject matter jurisdiction typically exists only "when the plaintiff's well-pleaded complaint raises issues of federal law," and not simply when federal preemption might be invoked as a defense to liability. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). However, a "corollary of the well-pleaded complaint rule" provides that "Congress may so completely pre-empt a particular area [of law] that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 63-64;

---

[6] On June 29, 2009, Montefiore voluntarily moved to dismiss its third and fourth causes of action for breach of contract and unjust enrichment pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 186. The District Court granted the motion on November 11, 2009. Accordingly, we have no occasion to consider those claims.

*accord In re WTC Disaster Site*, 414 F.3d 352, 372-73 (2d Cir. 2005) ("Complete preemption permits removal of a lawsuit to federal court based upon the concept that where there is complete preemption, only a federal claim exists. Where Congress has clearly manifested an intent to make causes of action removable to federal court, the federal courts must honor that intent." (alterations and quotation marks omitted)).

The District Court held, and defendants assert on appeal, that notwithstanding the complaint's express references to state claims for breach of contract and unjust enrichment, plaintiff's claims are completely preempted by ERISA and are therefore removable to federal court. We review *de novo* a district court's conclusions regarding its subject matter jurisdiction. *Devlin v. Transp. Commc'ns Int'l Union*, 173 F.3d 94, 98 (2d Cir. 1999).

### III. The *Davila* Test

ERISA was enacted to "protect . . . participants in employee benefit plans and their beneficiaries" by establishing uniform regulations for such plans and "providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). Among other things, ERISA creates a comprehensive civil enforcement scheme that completely preempts any state-law cause of action that "duplicates, supplements, or supplants" an ERISA remedy. *Davila*, 542 U.S. at 209; *see also Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 113 (2d Cir. 2008) ("The purpose of ERISA preemption is to ensure that all covered benefit plans will be governed by unified federal law . . . ."); *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008) (explaining that complete preemption under ERISA is "really a jurisdictional rather than a preemption doctrine, [as it] confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely

7

replace any state-law claim"). The ERISA civil enforcement scheme is set forth in § 502(a), *see* note 1, *ante*, and provides, *inter alia*, that a plan participant or beneficiary may bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Therefore, if Montefiore's claims fall within the scope of § 502(a)(1)(B), as defendants urge and plaintiffs deny, those claims are preempted by ERISA.

In *Davila*, the Supreme Court established a two-part test to determine whether a claim falls "within the scope" of § 502(a)(1)(B). *Davila*, 542 U.S. at 210 (internal citation omitted). Specifically, claims are completely preempted by ERISA if they are brought (i) by "an individual [who] at some point in time, could have brought his claim under ERISA § 502(a)(1)(B),"[7] and (ii) under circumstances in which "there is no other independent legal duty that is implicated by a defendant's actions." *Id.* The test is conjunctive; a state-law cause of action is preempted only if both prongs of the test are satisfied. *See Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1304 (11th Cir. 2010); *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 947 (9th Cir. 2009).

We now turn to consider each prong of this test.

### A. *Davila* Prong One

There is potential for confusion regarding the proper sequence of analysis under *Davila*. Specifically, in situations in which a party seeks remand to a state court, it easy to overlook the distinction between claims (1) brought *solely* pursuant to an independent duty that has nothing to do with ERISA, and claims which (2) *could* have been brought under ERISA, but *also* rest on "[an]other independent legal duty that is implicated by [the] defendant's actions." The former fails to satisfy

---

[7] That is, if they are brought by an individual who has standing to assert rights under ERISA § 502(a)(1)(B).

the first prong of *Davila* because it does not state a "colorable claim" for benefits, *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989), and therefore could not have been brought under ERISA, and the latter fails to satisfy the <u>second</u> prong of *Davila*. 542 U.S. at 210.

Accordingly, we can avoid this problem by expressly disaggregating the first prong of *Davila*. First, we consider whether the plaintiff is the *type* of party that can bring a claim pursuant to § 502(a)(1)(B); and second, we consider whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B). *Cf. Marin Gen. Hosp.,* 581 F.3d at 948 (holding, pursuant to the first prong of *Davila*, that although plan beneficiaries had validly assigned their ERISA claims to the provider hospital, the actual claim brought by the hospital was based upon a separate contractual obligation). After we have considered the two steps of the first prong, we will turn to the second prong to determine whether "there is [an] independent legal duty that is implicated by [the] defendant's actions." *Davila*, 542 U.S. at 210.

#### (i) *Davila* Prong One: Step One

As explained above, § 502(a)(1)(B) provides that a civil action may be brought "*by a participant or beneficiary*" of an ERISA plan to enforce certain rights under that plan pursuant to ERISA. *See* 29 U.S.C. § 1132(a)(1)(B) (emphasis supplied). Generally, § 502(a) is narrowly construed to permit only the enumerated parties to sue directly for relief. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27 (1983); *accord Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 14 (2d Cir. 1991). However, we have "carv[ed] out a narrow exception to the ERISA standing requirements" to grant standing "to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care." *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 178 (2d Cir. 2001); *accord Tango Transp. v. Healthcare Fin. Servs.,* 322 F.3d 888, 891 (5th Cir. 2003)

9

(collecting cases); *see also Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 n.7 (3d Cir. 2004) ("Almost every circuit to have considered the question has held that a health care provider can assert a claim under § 502(a) where a beneficiary or participant has assigned to the provider that individual's right to benefits under the plan[.]").

Here, each of the reimbursement forms that provide the basis for Montefiore's suit contain a "Y" for "yes" in the space certifying that the patient has assigned his claim to the hospital. Accordingly, pursuant to our holding in *Simon*, 263 F.3d 176, the first step of the first prong of the *Davila* test is satisfied: Montefiore is a health care provider to whom beneficiaries of the Plan have assigned their claims, and therefore is the type of party that can bring a claim against the Fund regarding benefits pursuant to § 502(a)(1)(B).[8]

That said, Montefiore vigorously contests the notion that it obtained valid assignments, arguing that "an attempt to assign ERISA benefits to an in-network provider is a nullity[.]" In support of its argument, Montefiore relies upon dicta in *Sewell v. 1199 Nat'l Benefits Fund for Health & Human Servs.*, 187 F. App'x 36, 39 n.1 (2d Cir. 2006), a non-precedential summary order in which we stated:

> Where the patient receives services from a participating provider, . . . it is not clear that the patient has anything to assign because the patient is entitled only to healthcare at no cost, not reimbursement. If the participant or beneficiary has no right to payment to assign to the participating provider, it is doubtful that the 'narrow exception' [for healthcare providers] to ERISA's otherwise stringent standing requirement would apply.

As the District Court correctly observed in its Opinion & Order of November 11, 2009, these stray comments are neither binding precedent nor even the holding of the case in which they appear. But

---

[8] We note that the valid assignment of claims is not necessarily limited to those instances in which the provider's documentation specifically reflects the assignment. Rather, a "checked box" or other written indication is merely one possible way of demonstrating that the claims were assigned.

10

more importantly, they do not accurately reflect the nature of the legal right at issue here.

The right to "health care at no cost" (or at less cost, where a co-payment or co-insurance fee is involved) is made possible only by arrangements to have one's health care provider reimbursed for the balance of the fee for services. Indeed, the difference between receiving "health care at no cost" and receiving direct reimbursement of one's costs is largely one of form, rather than of substance. This reality, in and of itself, is sufficient to support our holding that patients may assign their rights to "in-network" providers. However, even if we assume for the sake of argument that a provider would continue to provide medical services to beneficiaries at low or no cost despite an inability to enforce beneficiaries' rights under ERISA—quite an assumption—the fact remains that beneficiaries arguably would be liable for whatever costs the provider is unable to recover from a benefit plan, and would have a right to reimbursement of those costs pursuant to ERISA and to the terms of the plan.

For example, Montefiore's contract with MagnaCare *expressly* permits Montefiore to obtain payment (by billing or, if necessary, by suit) directly from patients in the event that Montefiore does not receive payment from the Fund. As Montefiore's counsel conceded at oral argument, in the event that a patient is charged or sued by Montefiore, his right to reimbursement from the Fund is a right that the patient may assign to Montefiore.

Montefiore's contract with Horizon, on the other hand, is silent as to whether Montefiore can seek full reimbursement directly from patients; however, even under that contract, patients are likely to be held liable for the services they received—it does not take a stretch of the imagination to expect that a patient who receives medical care will be required to pay for it.[9] *See Cagle v. Bruner*, 112

---

[9] We need not consider the question of whether a beneficiary can make a valid assignment to his in-network health care provider in the hypothetical situation in which the provider has expressly contracted *not* to seek full payment from the beneficiary.

F.3d 1510, 1515 (11th Cir. 1997) ("If provider-assignees cannot [receive a valid assignment so that they may] sue the ERISA plan for payment, they will bill the participant or beneficiary directly for the insured medical bills, and the participant or beneficiary will be required to bring suit against the benefit plan when claims go unpaid. On the other hand, if provider-assignees can sue for payment of benefits, an assignment will transfer the burden of bringing suit from plan participants and beneficiaries to providers[,] [who] are better situated and financed to pursue an action for benefits owed for their services. For these reasons, the interests of ERISA plan participants and beneficiaries are better served by allowing provider-assignees to sue ERISA plans." (citations omitted)); *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1289 n.13 (5th Cir. 1988) ("Many providers seek assignments of benefits to avoid billing the beneficiary directly and upsetting his finances and to reduce the risk of non-payment. If their status as assignees does not entitle them to federal standing against the plan, providers would either have to rely on the beneficiary to maintain an ERISA suit, or they would have to sue the beneficiary.").

Accordingly, plaintiff Montefiore's argument that it cannot receive a valid assignment of benefits is without merit. We hold that beneficiaries may assign their rights under ERISA § 502(a)(1)(B) to health care providers that have contracted to bill a benefit plan directly, as the beneficiaries did in this case.[10]

### (ii) *Davila* Prong One: Step Two

We turn to the second step of the first prong of the *Davila* test—whether the *actual claims* that Montefiore asserts can be construed as colorable claims for benefits pursuant to § 502(a)(1)(B).

---

[10] To be clear, our holding applies regardless of whether a provider's contract with a PPO or ERISA benefit plan is silent regarding the question of whether the provider can hold the patient liable for unmet obligations, as in the case of Montefiore's arrangement with Horizon.

12

*See Firestone Tire & Rubber Co.*, 489 U.S. at 117-18. Montefiore argues, and defendants deny, that its claims are simply contract and quasi-contract claims that have nothing to do with ERISA, and cannot be construed as claims for benefits under the Plan. Specifically, Montefiore contends, *inter alia*, that the "central disputed issue in this case is the <u>amount</u> which the Fund was required to pay Montefiore, pursuant to its contractual obligations to Montefiore." To this end, Montefiore emphasizes a common distinction in the case law between claims involving the "right to payment" and claims involving the "amount of payment"—that is, on the one hand, claims that implicate coverage and benefits established by the terms of the ERISA benefit plan, and, on the other hand, claims regarding the computation of contract payments or the correct execution of such payments. The former are said to constitute claims for benefits that can be brought pursuant to § 502(a)(1)(B), while the latter are typically construed as independent contractual obligations between the provider and the PPO or the benefit plan. *See, e.g., Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 530-31 (5th Cir. 2009); *Pascack Valley Hosp., Inc.*, 388 F.3d at 403-04; *Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Grp.*, 187 F.3d 1045, 1051 (9th Cir. 1999).

This distinction is helpful and instructive; however, after applying it to the claims for reimbursement submitted by Montefiore, the result is not favorable to Montefiore's claims on appeal. For example, among the selection of claims for reimbursement that the parties specifically submitted for our attention on appeal,[11] all of those for which the reason for denial is discernible[12] appear to implicate coverage determinations under the relevant terms of the Plan, including denials

---

[11] This selection of claims is sufficient to support our holding because we need only locate a single preempted claim to establish a basis for the exercise of federal subject matter jurisdiction. The selection before us includes multiple claims that are clearly preempted, as we explain below.

[12] Some of the documents in the record are nearly illegible; furthermore, the justification for the denial of a claim is not always explained on the face of the claim form. *See, e.g.*, Joint App'x at 305-06.

of reimbursement because "pre-certification [is] required," because the "services [were] not covered under [the] plan," or because the "member is not eligible." Joint App'x at 293, 296, 303. None of the selected claims appear to be claims regarding, for example, underpayment or untimely payment, where the basic right to payment has already been established and the remaining dispute only involves obligations derived from a source other than the Plan.[13]

In the proceedings below, the District Court analyzed the claim forms, reviewed related affidavits and evidence, and subsequently held in its Opinion & Order that "the Fund refused payment on at least some, if not all, of Montefiore's claims because certain services were not covered by the Plan, patients were not eligible under the Plan, or Montefiore neglected to follow procedures as set forth in the Plan." We conclude that it was proper for the District Court to look beyond the mere allegations of the complaint to the claims themselves (including supporting documentation) in conducting its analysis, and we agree with the District Court's conclusion that these claims are colorable claims for benefits pursuant to ERISA § 502(a)(1)(B).

### B. *Davila* Prong Two

Under *Davila*, a claim is completely preempted only if "there is no other independent legal duty that is implicated by [the] defendant's actions." 542 U.S. at 210. The key words here are "other" and "independent." As noted above, at least some of the claims at issue here are benefits claims in character (*i.e.*, they are "right to payment" claims). Accordingly, the "right to payment" forms the ERISA-related basis for legal action regarding those claims for reimbursement, and the only question remaining is whether some other, completely independent duty forms another basis

---

[13] One possible exception is a claim that appears to have been denied on the basis that the "charge [was] previously considered." Depending upon what occurred the first time the charge was considered, this claim may or may not implicate a coverage determination under the Plan. Joint App'x at 298.

14

for legal action; if the claims were in fact merely about the rate or execution of payment, they would not present a colorable claim pursuant to § 502(a)(1)(B) and we would not need to reach the application of the second prong of *Davila*.

Here, apart from Montefiore's argument that its claims involve only the amount of payment, Montefiore asserts that its claims sound separately and independently in quasi-contract law. *See* Appellant's Br. at 44-46. Specifically, Montefiore argues that prior to providing services to each beneficiary, it would call the Fund and verify that the patient was eligible and that the anticipated services were covered. These verbal communications, Montefiore contends, gave rise to an independent legal duty between Montefiore and the Fund.

We are not persuaded. Whatever legal significance these phone conversations may have had, *see* Appendix A, they did not create a sufficiently *independent* duty under *Davila*—indeed, as Montefiore concedes, this pre-approval process was *expressly required by the terms of the Plan itself* and is therefore inextricably intertwined with the interpretation of Plan coverage and benefits.

## IV. SUPPLEMENTAL JURISDICTION

Under 28 U.S.C. § 1367(a), district courts "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

In order to exercise supplemental jurisdiction, a federal court must first have before it a claim sufficient to confer subject matter jurisdiction. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Furthermore, the federal claim and state claim must stem from the same "common nucleus of operative fact"; in other words, they must be such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *Id.*

15

As we explained above, at least some of the claims for reimbursement brought by Montefiore are completely preempted by ERISA and therefore give rise to federal subject matter jurisdiction. The only question, then, is whether any remaining state law claims arise from the same common nucleus of operative fact. *Id.* Here, the parties do not dispute that all of the claims asserted by Montefiore involve the Fund's alleged failure to reimburse Montefiore for medical services provided to Plan beneficiaries between May 2003 and August 2008. Accordingly, assuming *arguendo* that any state-law claims exist, they are properly subject to the District Court's supplemental jurisdiction. *See, e.g., Brunswick Surgical Ctr., LLC v. CIGNA Healthcare*, Civ. No. 09-5857, 2010 WL 3283541, at *1 (D.N.J. Aug. 18, 2010) (holding that where health care providers' claims for reimbursement for medical services involved thirteen different health insurance policies, eight of which were governed by ERISA, claims regarding the five non-ERISA policies were subject to the court's supplemental jurisdiction).

## V. CONCLUSION

To summarize:

(1) Montefiore received valid assignments from the beneficiaries of the Plan, both during the period in which it had contracted with the Horizon PPO, and during the period in which it had contracted with the MagnaCare PPO;

(2) at least some of Montefiore's claims for reimbursement involve the *right to payment*, not merely disputes regarding the *amount or proper execution of payment*, and such claims are therefore colorable claims for benefits pursuant to ERISA § 502(a)(1)(B);

(3) Montefiore's claims do not implicate any duties of defendants separately and independently from defendants' duties under the Plan sounding in contract.

16

Accordingly, (4) at least some of Montefiore's claims are completely preempted by federal law and were properly removed to federal court; and

(5) in the circumstances presented here, any remaining state-law claims share a common nucleus of operative fact with the federal claims, and therefore, they are properly subject to the District Court's supplemental jurisdiction.

We have considered all of plaintiff's arguments and find them to be without merit. The judgment of the District Court is **AFFIRMED**, and the cause is **REMANDED** to the District Court for further proceedings consistent with this opinion.

# Appendix A



Montefiore contacted the Fund by telephone to obtain pre-certification for services provided to beneficiaries.

| Montefiore<br><br>(health care provider) | | Horizon<br>&<br>MagnaCare<br><br>(PPOs) | | Fund<br><br>(ERISA benefits plan) | | Beneficiaries<br><br>(individual members of the Plan) |
|---|---|---|---|---|---|---|
| | Contract | | Contract | | Contract<br>(the Plan) | |

Plan beneficiaries patronized Montefiore between May 2003 and August 2008