Chief District Judge PRESKA dissents in a separate opinion.
CHIN, Circuit Judge:
In this case, the district court found that plaintiff-appellant Aries Arditi’s claims against defendant-appellee Lighthouse International (“Lighthouse”) were preempted by the Employee Retirement Income Security Act (“ERISA”) because they arose under Lighthouse’s Pension Plan (the “Plan”) and not separately and independently out of Arditi’s written employment agreement (the “Agreement”). The district court denied Arditi’s motion to remand the case to state court, holding that Arditi’s claims were preempted by ERISA and that his suit was therefore properly removed to federal court. The district court then dismissed the action for failure to state a claim because Arditi had not stated any basis for challenging Lighthouse’s authority to amend the Plan.
On appeal, Arditi argues that the additional benefits he seeks are based on a promise separate and independent from the Plan. We disagree. Accordingly, we affirm the district court’s denial of Arditi’s motion to remand the case to state court and dismissal of the action for failure to state a claim upon which relief may be granted.

STATEMENT OF THE CASE

1. The Facts
The following facts are undisputed. *297 From 1982 to 2000, Arditi was employed by Lighthouse as a “vision scientist.” During this time, under the Plan, Arditi accrued 18.83 years of service credit.
In 2000, Arditi left Lighthouse, accepting employment elsewhere. After his departure, Lighthouse amended the Plan, adding a “Rule of 85,” which entitled any qualified employee to retire and collect her pension benefits before the age of 65 if the sum of the employee’s age and years of vested service were equal to or greater than 85.[1] The Plan also reserved Lighthouse’s right to amend the Plan, stating: “Lighthouse reserves the right at any time, by action of the Board, to modify or amend the Plan in whole or in part.” (Barr Decl., Ex. B ¶ 14.1).
On July 1, 2002, Arditi returned to Lighthouse, in part to take advantage of the Rule of 85 amendment. The Agreement, which was dated June 13, 2002 and signed by both parties, read as follows:
With respect to the ... Plan, in which you are already fully vested, your new employment here will result in reinstatement as a plan member. You now have credited service for purposes of pension calculation of 18.83 years of previous service and the amount of time you work here in the future will be added.
Our retirement plan has now added a Rule of 85 provision that provides an unreduced benefit to employees whose age plus years equal 85 or more. As you are now age 51, your age plus your years of service is approximately 70 years. Assuming you continue to work at the Lighthouse for another eight years, your age then, 59 and years of service then, 26, would equal 85. At that time if you opt to retire you will receive an unreduced pension benefit.
(Greenberg Decl., ECF Doc. No. 17-1, Ex. A at 2, Arditi v. Lighthouse Int'l, No. 10 Civ. 8416, 2010 WL 5168556 (S.D.N.Y. Dec. 10, 2010)).
On May 14, 2007, Lighthouse notified Plan members, including Arditi, that the Plan would be frozen. Indeed, on June 30, 2007, before Arditi’s age and years of service reached a total of 85, the Plan was frozen. The freeze stopped the accrual of service time for all Plan members.
On March 19, 2010, Arditi retired. Because of the freeze, Lighthouse did not credit Arditi for nearly three years of service—from July 1, 2007 (the date Lighthouse froze the Plan) to March 19, 2010 (the date Arditi retired).
2. Proceedings Below
On September 30, 2010, Arditi filed a lawsuit against Lighthouse in state court, seeking a declaratory judgment and asserting two causes of action for breach of contract. The complaint expressly referred to the Plan and sought benefits under the Plan. Lighthouse removed the *298 action to federal court. Arditi promptly and voluntarily discontinued the action.
On November 2, 2010, Arditi repleaded his claims and refiled the lawsuit in state court. The new complaint contained the same two causes of action as the first complaint, but eliminated certain direct references to the Plan and to ERISA.
The second action was also removed to federal court. On November 15, 2010, Arditi filed a motion to remand to state court. On November 19, 2010, Lighthouse filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).
On January 18, 2011, the district court denied Arditi’s motion to remand and dismissed the complaint. Arditi v. Lighthouse Int’l, No. 10 Civ. 8416, 2011 WL 166919 (S.D.N.Y. Jan. 18, 2011). The district court held that Arditi’s claim was properly removed to federal court because it was preempted by ERISA. Id. at *4; see ERISA § 502, 29 U.S.C. § 1132. The district court also held that dismissal of the complaint was warranted because Arditi failed to state any basis for challenging Lighthouse’s authority to amend the Plan. Arditi, 2011 WL 166919, at *4.
This appeal followed.

DISCUSSION

We review a district court’s ERISA preemption ruling and 12(b)(6) dismissal for failure to state a claim de novo. Stevenson v. Bank of N.Y. Co., 609 F.3d 56, 59 (2d Cir.2010) (preemption ruling); Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir.2009) (Rule 12(b)(6) dismissal). First, we examine the district court’s denial of Arditi’s motion to remand the case to state court. Second, we consider the district court’s dismissal of the case for failure to state a claim.
I. Motion to Remand
A. Applicable Law
1. Removal
“[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant” to federal court. 28 U.S.C. § 1441(a). District courts have original jurisdiction over “federal question” cases, or cases “arising under the Constitution, laws, or treaties of the United States.” 28 U.S.C. § 1331. To determine if a case involves a federal question, courts generally turn to the “well-pleaded complaint” rule—that is, courts examine “what necessarily appears in the plaintiffs statement of his own claim ... unaided by anything alleged in anticipation of avoidance of defenses ... [that] the defendant may interpose.” Aetna Health Inc. v. Davila, 542 U.S. 200, 207, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) (quoting Taylor v. Anderson, 234 U.S. 74, 75-76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914)) (internal quotation marks omitted).
Complete preemption provides one exception to the well-pleaded complaint rule. See id. “When a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state claim can be removed” to federal court. Id. (quoting Beneficial Nat. Bank v. Anderson, 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003)) (internal quotation marks omitted). “ERISA is one of these statutes.” Id. at 208, 124 S.Ct. 2488. “This is so because when the federal statute completely pre-empts the state-law cause of action, ... even if pleaded in terms of state law, [it] is in reality based on federal law.” Id. at 207-08, 124 S.Ct. 2488 (internal quotation marks omitted). This exception also prevents plaintiffs from “avoiding] removal” to federal court “by declining to plead necessary federal *299 questions.” Romano v. Kazacos, 609 F.3d 512, 519 (2d Cir.2010) (quoting Rivet v. Regions Bank, 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998)) (internal quotation marks omitted).
2. ERISA Preemption
“Congress enacted ERISA to ‘protect ... the interests of participants in employee benefit plans and their beneficiaries’ by setting out substantive regulatory requirements for employee benefit plans and to ‘provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.’ ” Davila, 542 U.S. at 208, 124 S.Ct. 2488 (quoting 29 U.S.C. § 1001(b)). Section 502(a)(1)(B) of ERISA provides participants or beneficiaries with a civil remedy to recover benefits due under their plans, to enforce rights under their plans, or to clarify rights to future benefits under their plans. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a).
To establish a “uniform regulatory regime over employee benefit plans,” and “to ensure that employee benefit plan regulation is exclusively a federal concern,” ERISA includes expansive pre-emption provisions. Davila, 542 U.S. at 208, 124 S.Ct. 2488 (internal quotation marks and citations omitted); see ERISA § 514, 29 U.S.C. § 1144. ERISA provides that it “shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.” ERISA § 514, 29 U.S.C. § 1144.
Under the Supreme Court’s test in Davila, ERISA preempts a cause of action where: (1) “an individual, at some point in time, could have brought his or her claim under ERISA § 502(a)(1)(B);” and (2) “no other independent legal duty ... is implicated by a defendant’s actions.” Davila, 542 U.S. at 210, 124 S.Ct. 2488; see Montefiore Med. Ctr. v. Teamsters Local 272, 642 F.3d 321, 328 (2d Cir.2011) (applying the Davila two-part conjunctive test). To avoid potential confusion under the first prong of Davila, this Court has further clarified that the plaintiff must show that: (a) he is the type of party who can bring a claim pursuant to § 502(a)(1)(B) of ERISA; and (b) the actual claim asserted can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B). Montefiore, 642 F.3d at 328.
B. Application
1. ERISA Preemption
First, in this case, Davila’s first prong is satisfied because Arditi could have brought his claim under ERISA. See Davila, 542 U.S. at 210, 124 S.Ct. 2488. Indeed, he did so in his complaint in the first action. Under Montefiore, Arditi is the type of party who can bring an ERISA claim because he is a Plan participant and he is seeking benefits under the Plan and, specifically, under the Rule of 85 provision. See Montefiore, 642 F.3d at 328. Additionally, Arditi’s actual claims asserted seek enforcement of specific provisions of the Plan, “implicate coverage and benefits established by the terms of the ERISA benefit plan,” and “can be construed as ... colorable claim[s] for benefits pursuant to § 502(a)(1)(B).” Id.
Second, Davila’s second prong is also satisfied because “no other independent legal duty” is implicated by Lighthouse’s actions. See Davila, 542 U.S. at 210, 124 S.Ct. 2488; Montefiore, 642 F.3d at 328. Lighthouse’s obligations under the Plan are “inextricably intertwined with the interpretation of Plan coverage and benefits” and “[do] not create a sufficiently independent duty under Davila.” See Montefiore, 642 F.3d at 332.
To avoid ERISA preemption, Arditi argues that he is not seeking benefits under *300 the Plan. Instead, Arditi claims that he is seeking damages for breach of a promise separate and independent from the Plan and set forth in the Agreement, using the Plan merely as a benchmark for damages.
The argument fails because Arditi was in fact a participant in the Plan and his pension rights arose under the Plan. When Arditi rejoined Lighthouse, the Agreement stated: “With respect to the Lighthouse International Pension Plan, in which you are already fully vested, your new employment here will result in reinstatement as a plan member.” (Greenberg Deck, Ex. A at 2 (emphasis added)). The Agreement further described Lighthouse’s “Rule of 85” provision as a new addition to “[o]ur retirement plan.” (Greenberg Deck, Ex. A at 2). Hence, the language of the Agreement makes clear that Arditi was being “reinstated” into the Plan, and that the Rule of 85 provision had been “added” to the Plan. (Id.). The Agreement described the benefits that Arditi would acquire upon his return to the Plan and made clear that Arditi’s benefits arose from, and were governed by, the terms of the Plan. The Plan provided more than a mere benchmark for calculating damages; indeed, it was the basis for the claimed benefits. Thus, as the district court correctly held, the Agreement did not establish a separate and independent promise; rather, Arditi’s claims derived directly from the Plan.
The Dissent argues that “[although Arditi was a participant in the Plan and entitled to receive a reduced benefit under it, he raises at least a colorable claim that his right in general to receive ‘an unreduced pension benefit’ upon retirement— that is, a different benefit from that payable under the Plan—arises under the express terms of his employment agreement.” (Dissent Op. at 303 (emphasis in dissenting opinion) (quoting Greenberg Deck, Ex. A at 2)). The phrase “unre-
duced pension benefit” appears in the last sentence of the second paragraph of the second page of the Agreement. (Green-berg Deck, Ex. A at 2). That paragraph, however, begins as follows: “Our retirement plan has now added a Rule of 85 provision that provides an unreduced benefit to employees whose age plus years equal 85 or more.” (Greenberg Deck, Ex. A at 2 (emphases added)). In context, then, it is clear that the “unreduced pension benefit” arose from the Plan and not the Agreement.
Further, Stevenson, the case on which Arditi relies, is easily distinguishable. There, the plaintiff left the employ of the defendant bank. 609 F.3d at 60. The bank nonetheless promised to “maintain [the plaintiffs] benefits” under its pension plan, even though pension beneficiaries would normally lose coverage upon ending their employment with the bank. Id. This Court held that the plaintiffs complaint did “not derive[ ] from the particular rights and obligations established by [any] benefit plant ] • • • but rather[,] from a separate promise that references various benefit plans.” Id. at 60-61 (quoting Davila, 542 U.S. at 213, 124 S.Ct. 2488) (internal quotation marks and citations omitted).
Here, there is nothing in the Agreement that is comparable to the promises made in Stevenson. See id. at 60. In Stevenson, an agreement separate and independent from the pension plan governed the plaintiffs, benefits because the plaintiff was no longer in the bank’s employ and was no longer a participant in the bank’s plan. Id. at 60-61. Whatever rights the plaintiff had arose not from the bank’s plan, but from the independent agreement that gave him benefits even though he had no right to them under the plan. Here, the Agreement expressly referred to Arditi’s “reinstatement” into the Plan as a Lighthouse *301 employee and described Arditi’s benefits under the Plan upon his return to Lighthouse. The Agreement merely described the benefits Arditi would receive as a Plan member; it made no promises of benefits separate and independent from the benefits under the Plan.
Accordingly, we agree with the district court that Arditi’s claims are preempted by ERISA.
2. Removal
The district court properly denied Arditi’s motion to remand the case to state court because Arditi’s state law claims are preempted by ERISA. The suit was properly removed to federal court, the district court had federal jurisdiction over the case, and remand to state court was not warranted. See 28 U.S.C. §§ 1331, 1441(a).
II. Motion to Dismiss
“To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotation marks and citations omitted).
Here, the district court properly dismissed Arditi’s complaint because he failed to state a claim for relief that was plausible on its face. See id. Arditi did not challenge Lighthouse’s authority to amend the Plan; indeed, Arditi conceded that Lighthouse had the authority to freeze the Plan. Accordingly, the district court properly dismissed Arditi’s action for failure to state a plausible claim. Id.

CONCLUSION

We have considered Arditi’s remaining arguments and conclude that they are without merit. For the reasons set forth above, the judgment of the district court is AFFIRMED.

. The relevant provisions of the Plan were as follows:
Effective April 1, 2001, if a Member’s combined age and years of Vesting Service equals 85 or more the early retirement benefit shall be equal to his Accrued Benefit at such Early Retirement Date; however, such early retirement benefit shall not be subject to reduction.
If a former Member is reemployed following a Period of Severence of more than 12
months, he shall again become a Member on his Reemployment Date. Such Member’s Vesting Service and Credited Service shall be restored upon his completion of one year of Continuous Service
(Barr Decl., ECF Doc. No. 11-2, Ex. B ¶¶ 5.1(c), 7.3(b), Arditi v. Lighthouse Int'l, No. 10 Civ. 8416, 2010 WL 5168555 (S.D.N.Y. Nov. 19, 2010)).