PRESEA, Chief District Judge,
dissenting:
The majority’s decision today reaches beyond the squarely presented question of whether Arditi’s claims are preempted by ERISA and in so doing effectively reaches the merits of his underlying state law contract claim against Lighthouse. Because the proper forum for resolving the underlying contract claim is the state court and the majority’s holding eviscerates any distinction between the federal preemption and state law merits questions, I respectfully dissent.
As the majority notes, in determining whether a case involves a federal question such that remand to a state court would be inappropriate, courts look to the “well-pleaded complaint”—examining “what necessarily appears in the plaintiffs statement of his own claim ... unaided by anything alleged in anticipation of avoidance of defenses ... [that] the defendant may interpose.” Aetna Health Inc. v. Davila, 542 U.S. 200, 207, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) (quoting Taylor v. Anderson, 234 U.S. 74, 75-76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914)) (internal quotation marks omitted). For the policy reasons described by the majority, ERISA serves as an exception to this rule because it “wholly displaces the state-law cause of action through complete pre-emption.” Id. (quoting Beneficial Nat’l Bank v. Anderson, 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003)) (internal quotation marks omitted). This exception does, as the majority suggests, prevent plaintiffs from “avoiding] *302 removal” to federal court “by declining to plead ‘necessary federal questions.’ ” Romano v. Kazacos, 609 F.3d 512, 519 (2d Cir.2010) (quoting Rivet v. Regions Bank, 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998)).
ERISA preemption does not occur, however, solely because a state law claim may alternatively be a colorable claim under the ERISA statute. Under the Supreme Court’s test in Davila, ERISA preempts a cause of action where: (1) “an individual, at some point in time, could have brought his or her claim under ERISA § 502(a)(1)(B);” and (2) “no other independent legal duty ... is implicated by a defendant’s actions.” Davila, 542 U.S. at 210, 124 S.Ct. 2488. This Court has clarified that the first prong of Davila is satisfied where: (a) a plaintiff is the type of party who can bring a claim pursuant to § 502(a)(1)(B) of ERISA; and (b) the actual claim asserted can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B). See Montefiore Med. Ctr. v. Teamsters Local 272, 642 F.3d 321, 328 (2d Cir.2011). The majority concludes that the first prong of the Davila test is satisfied because Arditi could have brought his claim under ERISA and because Arditi is the type of party who can bring an ERISA claim as a Plan participant seeking benefits under the Rule of 85 provision. See Majority Opinion (“Majority Op.”) at 299-300. Though it is not at all clear to me that Arditi could make a colorable claim for his specific requested relief under the Plan’s Rule of 85 provision (as the Plan was validly amended to exclude this benefit), (Barr Deck, ECF Doc. No. 11-2, Ex. B ¶ 14.1, Arditi v. Lighthouse Int'l, No. 10 Civ. 8416, 2010 WL 5168556 (S.D.N.Y. Nov. 19, 2010)), I will accept it as true for the purposes of this opinion.
Even if the majority is correct in concluding that Davila’s first prong is met, ERISA preemption still does not occur unless “no other independent legal duty ... is implicated by a defendant’s actions.” Davila, 542 U.S. at 210, 124 S.Ct. 2488 (emphasis added). The two Davila prongs are independent; otherwise courts could essentially collapse them into one by finding that a plaintiffs claim is a colorable one under ERISA and going no further. The majority appears to do so here. See Majority Op. at 299-300. The majority concludes that Lighthouse’s obligations to Arditi under the Plan are “inextricably intertwined with the interpretation of Plan coverage and benefits” and therefore “[do] not create a sufficiently independent duty under Davila.” See id. at 299 (citing Montefiore, 642 F.3d at 332). As this Court recently stated, however, an independent legal duty incorporating Plan benefits or relying on Plan terms and calculations does not in itself lead to ERISA preemption. See Stevenson v. Bank of N.Y. Co., 609 F.3d 56, 61 (2d Cir.2010). Courts must look to the nature of a plaintiffs claim of an independent legal duty (and therefore to “defendant’s actions,” Davila, 542 U.S. at 210, 124 S.Ct. 2488) for guidance.
The majority’s analogy to this Court’s prior holding in Montefiore on this point is flawed in two respects. First, the plaintiff health services provider in Montefiore claimed that the relevant independent legal duty arose in quasi-contract—specifically, that prior to providing services to each beneficiary under the Defendant Fund’s Plan, Montefiore called the Fund and verified that the patient was eligible and the anticipated services were covered, and that these verbal communications gave rise to an independent legal duty between Montefiore and the Fund. Montefiore, 642 F.3d at 332. This Court concluded that these verbal communications were insufficient on their face. Id. Second, and most critically, this Court observed in Montef *303 tore that “this pre-approval process was expressly required by the terms of the Plan itself” and was therefore “inextricably intertwined with the interpretation of Plan coverage and benefits.” Id. These facts starkly contrast with those in this case.
First, Arditi claims that an independent legal duty arose in this case as a matter of pure contract law, citing the text of his 2002 employment agreement with Lighthouse which states: “Assuming you continue to work at the Lighthouse for another eight years, your age then, 59 and years of service then, 26, would equal 85. At that time if you opt to retire you will receive an unreduced pension benefit.” (Green-berg Deck, ECF Doc. No. 17-1, Ex. A at 2, Arditi v. Lighthouse Int’l, No. 10 Civ. 8416, 2010 WL 5783418 (S.D.N.Y. Dec. 10, 2010) (emphasis added)). Essentially Arditi argues that this independent undertaking by his employer exempted him from the admittedly valid freezing of the Plan applicable to all other Plan participants and constituted a promise by the employer to make up the difference between the “unreduced pension benefit” allegedly promised in the agreement and the reduced pension benefit payable under the frozen Plan. Moreover, unlike in Montefiore, Lighthouse was under no specific obligation under the terms of the Plan itself to make this separate promise in Arditi’s employment contract. Arditi argues on appeal, consistent with our prior holding in Stevenson, that he is seeking damages for breach of a promise made separately and independently from the Plan enrollment, but referencing its terms as a benchmark for calculation.
In rejecting Arditi’s arguments, the majority states that they must fail because he was a participant in the Plan and his right to a pension arose solely under the Plan. See Majority Op. at 300. This goes too far. Although Arditi was a participant in the Plan and entitled to receive a reduced benefit under it, he raises at least a color-able claim that his right in general to receive “an unreduced pension benefit” upon retirement—that is, a different benefit from that payable under the Plan— arises under the express terms of his employment agreement. This is precisely the species of claim this Court has already stated is not preempted by ERISA. See, e.g., Stevenson, 609 F.3d at 61 (“The BNY benefits plans may provide a benchmark for determining claimed damages, but such damages would be payable from BNY’s own assets, not from the plans themselves.”). So too in this case. Arditi’s Complaint alleges an independent contractual duty to pay an unreduced pension benefit as a condition of his employment with Lighthouse “separate and apart from any obligation [Lighthouse] might have had under the Pension Plan.” (Barr Deck, Ex. A at 8). As this allegation makes clear, Arditi is not merely seeking a claim of right under the Plan but damages for breach of an independent contractual obligation, not necessarily payable from the Plan itself but from Lighthouse’s own assets. This claim for relief is entirely consistent with this Court’s holding in Stevenson and is not preempted by ERISA.
The majority attempts to distinguish Stevenson by pointing to the fact that Stevenson had left the employ of the defendant bank, and the bank had nonetheless promised to “maintain [the plaintiffs] benefits” under its pension plan even though pension beneficiaries normally lost coverage upon terminating their employment. See Majority Op. at 300-01; Stevenson, 609 F.3d at 60. Because the Stevenson plaintiff was expressly not an employee and therefore no longer a member of the Plan, the majority argues, he can establish an independent obligation that Arditi cannot. See id. This eurrent/former employee *304 distinction is arbitrary and is not compelled by Stevenson itself. Unless the majority is prepared to hold today that current employees enrolled in ERISA-style benefit plans can never demonstrate that their employers have made them an independent promise calculated by reference to an existing plan, as in Stevenson, then the majority is simply evaluating the relative strength of the Stevenson and Arditi promises when it says “there is nothing in the Agreement that is comparable to the promises made in Stevenson.” See id. at 300. Evaluating the strength of Lighthouse’s promise to Arditi in his employment agreement, however, is of course a matter of state contract interpretation rather than a matter of ERISA preemption. It is sufficient that Arditi points to a contract outside his enrollment in the Plan and raises a colorable claim that it establishes an independent legal duty between Lighthouse and himself. Actually adjudicating that contract claim is the province of the state court of competent jurisdiction.
Indeed, it is troubling that in reaching its holding today, the majority is forced to decide several ultimate issues of contract interpretation. This Court is forced to conclude, for example, that the language in the employment agreement referring to “reinstatement as a plan member,” (Green-berg Decl., Ex. A at 2), outweighs the language stating “[a]t that time if you opt to retire you will receive an unreduced pension benefit,” (id.). See Majority Op. at 300-01. The majority concludes that the employment agreement only “described the benefits that Arditi would acquire upon his return to the Plan and made clear that Arditi’s benefits arose from, and were governed by, the terms of the Plan.” Id. at 300. The fact this panel cannot agree on what, if anything, the employment agreement “made clear” with regard to the pension benefit seems to cut against this holding and speaks to at least a fact question on contract interpretation. Moreover, it is clear that the majority here again views Arditi’s enrollment in the Plan and ongoing employment with Lighthouse to be fatal to his claim, even if it does not state this in such pejorative terms. That Arditi is a Plan beneficiary does not, in my view, heighten his burden in raising a colorable claim of an extra-Plan independent legal duty based on “[D]efendant’s actions.” Davila, 542 U.S. at 210, 124 S.Ct. 2488. Here, Arditi has done so. That it may be less clear-cut than the promise at issue in Stevenson is of no moment. A plaintiff raising a colorable independent claim of state contract law is not required to prove his case in federal court in order to avoid ERISA preemption.
Thus, the majority has collapsed the two Davila prongs into one: having found that Arditi’s claim could possibly have been brought as a direct claim for Plan benefits under ERISA, it essentially stops there. The majority is only able to conclude cursorily that the second Davila prong is satisfied by arbitrarily distinguishing Stevenson and pointing to the clearly distinguishable facts in Montefiore as evidence that Arditi’s claim is also “inextricably intertwined with the interpretation of Plan coverage and benefits.” Montefiore, 642 F.3d at 332. Ironically, it was in Montefiore that this Court expressly warned of the danger of confusing the two Davila prongs in this way:
[I]n situations in which a party seeks remand to a state court, it [is] easy to overlook the distinction between a claim (1) brought solely pursuant to an independent duty that has nothing to do with ERISA, and a claim which (2) could have been brought under ERISA, but also rests on “[an]other independent legal duty that is implicated by [the] de *305 fendant’s actions.” The former fails to satisfy the first prong of Davila because it does not state a “colorable claim” for benefits, Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117-18, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), and therefore could not have been brought under ERISA, and the latter fails to satisfy the second prong of Davila. Davila, 542 U.S. at 210, 124 S.Ct. 2488.
Montefiore, 642 F.3d at 328. It is for this reason that the fact that Arditi first styled his action as one for benefits under the Plan is not relevant to our decision today. See, e.g., Majority Op. at 297-98.
For these reasons, I respectfully dissent.