**13-1695-cv**
*Wurtz v. Rawlings Co.*

## In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2013

ARGUED: OCTOBER 30, 2013
DECIDED: JULY 31, 2014

No. 13-1695-cv

MEGHAN WURTZ, MINDY BURNOVSKI, individually and on behalf of
all others similarly situated,
*Plaintiffs-Appellants,*

*v.*

THE RAWLINGS COMPANY, LLC, OXFORD HEALTH PLANS (NY), INC.,
UNITEDHEALTH GROUP INCORPORATED,
*Defendants-Appellees.*

————

Before: WALKER, CABRANES, and PARKER, *Circuit Judges.*

————

Plaintiffs initially filed the complaint in this case in New York state court, seeking, among other things, to enjoin defendant insurers under N.Y. Gen. Oblig. Law § 5-335 from obtaining reimbursement of medical benefits from plaintiffs' tort settlements. Defendants removed this action to the Eastern District of New York (Joseph F. Bianco, *District Judge*), where the district court granted defendants' motion to dismiss under Rule 12(b)(6) for failure to state

a claim on the basis that plaintiffs' claims were subject to both "complete" and "express" preemption under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

We hold that plaintiffs' claims do not satisfy the Supreme Court's test for being subject to complete ERISA preemption, which would have conferred federal subject-matter jurisdiction. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). Such jurisdiction exists, however, under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). We thus reach the merits of the express preemption defense and conclude that N.Y. Gen. Oblig. Law § 5-335 is saved from express preemption under ERISA § 514, 29 U.S.C. § 1144, as a law that "regulates insurance." Accordingly, we VACATE the district court's judgment and REMAND for further proceedings on plaintiffs' claims.

————

FRANKLIN P. SOLOMON, Solomon Law Firm, LLC, Cherry Hill, NJ, and STEVEN J. HARFENIST, Friedman, Harfenist, Kraut & Perlstein LLP, Lake Success, NY (Frank R. Schirripa, Hach Rose Schirripa & Cheverie LLP, New York, NY, *on the brief*), *for Plaintiffs-Appellants*.

RICHARD W. COHEN, Lowey Dannenberg Cohen & Hart, P.C., White Plains, NY, and ANTON METLITSKY, O'Melveny & Myers LLP, New York, NY (Uriel Rabinovitz, Lowey Dannenberg Cohen & Hart, P.C., White Plains, NY; Gerald Lawrence, Lowey Dannenberg Cohen & Hart, P.C., West Conshohocken, PA; Brian D. Boyle, Theresa S. Gee, David K. Roberts, O'Melveney & Myers LLP, Washington, DC; Charles E. Bachman, O'Melveny & Myers LLP, New York, NY, *on the brief*), *for Defendants-Appellees*.

David S. Preminger, Keller Rohrback LLP, New York, NY, and Benjamin Gould, Keller Rohrback LLP, Seattle, WA, *for* Amicus Curiae *New York State Trial Lawyers Association*.

————

JOHN M. WALKER, JR., *Circuit Judge*:

Plaintiffs initially filed the complaint in this case in New York state court, seeking, among other things, to enjoin defendant insurers under N.Y. Gen. Oblig. Law § 5-335 from obtaining reimbursement of medical benefits from plaintiffs' tort settlements. Defendants removed this action to the Eastern District of New York (Joseph F. Bianco, *District Judge*), where the district court granted defendants' motion to dismiss under Rule 12(b)(6) for failure to state a claim on the basis that plaintiffs' claims were subject to both "complete" and "express" preemption under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.

We hold that plaintiffs' claims do not satisfy the Supreme Court's test for being subject to complete ERISA preemption, which would have conferred federal subject-matter jurisdiction. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). Such jurisdiction exists, however, under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). We thus reach the merits of the express preemption defense and conclude that N.Y. Gen. Oblig. Law § 5-335 is saved from express preemption under ERISA § 514, 29 U.S.C. § 1144, as a law that "regulates insurance." Accordingly, we VACATE the district court's judgment and REMAND for further proceedings on plaintiffs' claims.

## BACKGROUND

The New York statute at issue in this appeal, N.Y. Gen. Oblig. Law § 5-335,[1] states that a personal injury settlement presumptively "does not include any compensation for the cost of health care services" or other losses that "are obligated to be paid or reimbursed by a benefit provider" (such as an insurer), and that benefit providers have no "right of subrogation or reimbursement against any such settling party."[2] When section 5-335 was enacted in 2009, it eliminated an asymmetry between jury verdicts and settlements that tended to discourage the settlement of personal injury lawsuits.[3]

---

[1] For purposes of this appeal, we will refer to the version of section 5-335 that was in effect at the time of this action and relied upon by the District Court in reaching its decision as well as the parties in their briefing here. We note, however, that the statute has since been amended on November 13, 2013, primarily by replacing references to "a benefit provider" with "an insurer," and the amendment applies retroactively to claims brought on or after November 12, 2009. *See* 2013 N.Y. Sess. Laws Ch. 516 (codified at N.Y. Gen. Oblig. Law § 5-335). The changes enacted by the New York legislature do not affect our analysis.

[2] "[S]ubrogation is the principle by which an insurer, having paid losses of its insured, is placed in the position of its insured so that it may recover from the third party legally responsible for the loss." *Teichman ex rel. Teichman v. Cmty. Hosp. of W. Suffolk*, 663 N.E.2d 628, 631 (N.Y. 1996) (internal quotation marks omitted). While the equitable doctrine of subrogation is distinct from the contractual right of reimbursement, *see id.* at 631-32; 16 Steven Plitt et al., *Couch on Insurance 3d* § 222:82, the distinction is not relevant to this appeal.

[3] *See* 2009 N.Y. Sess. Laws 1265 (Ch. 494) (enacting section 5-335). In New York, jury awards in personal injury actions may not include medical expenses for which an insurer has paid. N.Y. C.P.L.R. § 4545(a). However, in 1996 (thirteen years prior to the enactment of section 5-335), the New York Court of Appeals held that after a personal injury settlement, insurers may "seek a refund of any medical expense payments included in the settlement." *Teichman*, 663 N.E.2d at 632. And in 2009, the year of section 5-335's enactment, the New York Court of Appeals held that settlements may not eliminate an insurer's subrogation right, but suggested that "the Legislature may wish to reexamine" this issue. *Fasso v.*

In February 2012, plaintiffs Meghan Wurtz and Mindy Burnovski filed a class action complaint in New York state court, alleging section 5-335 violations by the three defendants, which are related companies in the insurance business: The Rawlings Company, LLC; Oxford Health Plans (NY), Inc.; and UnitedHealth Group, Inc.[4] According to the complaint, both named plaintiffs had received medical benefit payments from defendants for personal injuries. Wurtz also settled her personal injury lawsuit, thereby recovering from the tortfeasor. Defendants had asserted liens under plaintiffs' insurance plans to recover medical expenses that they had paid to plaintiffs, and Wurtz paid a reimbursement sum of $1,316.87 to The Rawlings Company, LLC. In filing their action, plaintiffs sought a declaration that (based on section 5-335) defendants did not have a right to seek reimbursement or subrogation of medical benefits against plaintiffs' tort settlements, and they also sought damages for unjust enrichment and deceptive business practices under N.Y. Gen. Bus. Law § 349.

Defendants removed this action to the Eastern District of New York and then moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim based on ERISA preemption. The district court granted defendants' motion to dismiss, holding that plaintiffs' claims "are superseded under two parallel and independent principles of preemption: (1) complete preemption under ERISA § 502(a), and (2) express preemption under ERISA § 514." *Wurtz v. Rawlings Co., LLC*, 933 F. Supp. 2d 480, 489 (E.D.N.Y. 2013). The complete preemption holding permitted

---

*Doerr*, 903 N.E.2d 1167, 1171-73 (N.Y. 2009). Thus, tortfeasors would be unlikely to include medical expenses in settlement offers (as these would not be included in awards at trial), and yet insurers could use subrogation to extract from tort settlements medical expenses that they had covered. *See generally* Brief of Amicus Curiae New York State Trial Lawyers Association at 5-6.

[4] The Rawlings Company collects subrogation claims on behalf of insurer Oxford Health (NY), which is a wholly owned subsidiary of insurer UnitedHealth Group.

plaintiffs' claims to be recast as claims under ERISA, but the district court concluded that the claims could not successfully proceed under ERISA because plaintiffs had not exhausted their administrative remedies and because the terms of their plans allow reimbursement. *Id.* at 507-09. The district court also held that plaintiffs' claims for damages were "simply a reassertion of their declaratory judgment claim" and were thus "also expressly preempted." *Id.* at 507 n.10. Plaintiffs timely appealed.

## DISCUSSION

"We review a district court's ERISA preemption ruling and 12(b)(6) dismissal for failure to state a claim de novo." *Arditi v. Lighthouse Int'l*, 676 F.3d 294, 298 (2d Cir. 2012). "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Davila*, 542 U.S. at 208. However, "because the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). Thus, "analysis of ERISA preemption must start with the presumption that 'Congress does not intend to supplant state law.'" *Stevenson v. Bank of N.Y. Co.*, 609 F.3d 56, 59 (2d Cir. 2010) (quoting *Gerosa v. Savasta & Co.*, 329 F.3d 317, 323 (2d Cir. 2003)).

## I.    Federal Subject-Matter Jurisdiction

We begin by addressing our "special obligation to satisfy [ourselves] . . . of [our] own jurisdiction." *Arnold v. Lucks*, 392 F.3d 512, 517 (2d Cir. 2004) (internal quotation mark omitted) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). The district court held that plaintiffs' claims were subject to both "complete" preemption and "express" preemption. As explained below, complete preemption can be the basis for federal subject-matter jurisdiction, but express preemption cannot. Because we hold below that the district court erred in finding N.Y. Gen. Oblig. Law § 5-335 to be completely preempted by ERISA, we normally would decline to reach the merits of the express preemption defense. In this

case, however, there is another basis for federal subject-matter jurisdiction under CAFA, 28 U.S.C. § 1332(d).

### A.    Preemption and Federal Jurisdiction

Express preemption is one of the "three familiar forms" of ordinary defensive preemption (along with conflict and field preemption). *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 273 (2d Cir. 2005). It occurs when "Congress . . . withdraw[s] specified powers from the States by enacting a statute containing an express preemption provision." *Arizona v. United States*, 132 S. Ct. 2492, 2500-01 (2012). As an ordinary defensive preemption claim, express preemption cannot support federal jurisdiction because it would not appear on the face of a well-pleaded complaint. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987); *Sullivan*, 424 F.3d at 272 ("The well-pleaded complaint rule mandates that in assessing subject-matter jurisdiction, a federal court must disregard allegations that a well-pleaded complaint would not include—e.g., allegations about anticipated defenses.").

In contrast, under the "so-called 'complete preemption doctrine,'" which is distinct from the three forms of defensive preemption, "a plaintiff's 'state cause of action [may be recast] as a federal claim for relief, making [its] removal [by the defendant] proper on the basis of federal question jurisdiction.'" *Vaden v. Discover Bank*, 556 U.S. 49, 61 (2009) (alterations in original) (quoting Wright & Miller, 14B *Fed. Prac. & Proc. Juris.* § 3722.2); *see also Metro. Life*, 481 U.S. at 63-67 (extending complete preemption doctrine to the ERISA context and stating that complete preemption, unlike ordinary defensive preemption, supports federal subject-matter jurisdiction). "In concluding that a claim is completely preempted, a federal court finds that Congress desired not just to provide a federal defense to a state law claim but also to replace the state law claim with a federal law claim and thereby give the defendant the ability to seek adjudication of the claim in federal court." 14B *Fed. Prac. & Proc. Juris.* § 3722.2. This does not mean simply that Congress intended the federal court to adjudicate a state law claim; rather, when a claim is completely preempted, "the law governing the

complaint is exclusively federal." *Vaden*, 556 U.S. at 61; *see also Arditi*, 676 F.3d at 298.

Thus, in a case such as this, complete preemption may be "crucial to the existence of federal subject-matter jurisdiction." *Sullivan*, 424 F.3d at 274. Below, we hold that plaintiffs' claims were not completely preempted. Thus, in the absence of an alternative basis for subject-matter jurisdiction, it would be inappropriate to reach the merits of the ordinary express preemption defense. *See id.* at 277 ("Because it follows from our holding [of no complete preemption] that the district court lacked subject-matter jurisdiction over this case, we have no occasion to consider the merits of [defendant's] argument that the plaintiffs' . . . claims . . . are subject to ordinary preemption.").

### B.     Class Action Fairness Act

In this case, defendants have asserted an alternative basis to justify removal to federal court. Under CAFA, federal courts have jurisdiction over a class action filed under Fed. R. Civ. P. 23 or a "similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action" if "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs" and the parties are minimally diverse. 28 U.S.C. § 1332(d)(1)-(2). CAFA does not apply when "the number of members of all proposed plaintiff classes in the aggregate is less than 100." *Id.* § 1332(d)(5)(B).

"We generally evaluate jurisdictional facts, such as the amount in controversy, on the basis of the pleadings, viewed at the time when defendant files the notice of removal. With this in mind, a court must assess the three prerequisites for CAFA jurisdiction: no fewer than 100 members of the plaintiff class, minimal diversity, and $5 million in controversy." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56-57 (2d Cir. 2006) (internal citation omitted). "[The] defendant bears the burden of establishing federal subject matter jurisdiction" by showing that there is a "reasonable probability" that each of the jurisdictional prerequisites is satisfied. *Id.* at 58 (internal quotation marks omitted).

Defendants have satisfied this burden. Plaintiffs filed this action as a class action under Article 9 of the New York Civil Practice Law and Rules. With regard to the number of class members, the complaint states that "[p]laintiffs reasonably believe[] that there are hundreds of members in the proposed Class." With regard to minimal diversity, the complaint states that the named plaintiffs are residents of Arkansas and New York but makes no declaration as to citizenship. As defendants state in their notice of removal, however, "[e]ven if both were citizens of New York, minimal diversity exists since UnitedHealth is both incorporated and has its principal place of business in Minnesota." *See Blockbuster*, 472 F.3d at 59 ("[I]t seems plain to us that [defendant] is able to meet its burden of showing there is a reasonable probability that at least one of these class members is a citizen of New York and thus is 'a citizen of a State different from . . . defendant.'" (quoting 28 U.S.C. § 1332(d)(2)(A))). Finally, with regard to the requirement of $5 million in controversy, the complaint states that defendants have "collect[ed] hundreds of millions of dollars in fully insured health insurance liens that they were not entitled to enforce or collect following the enactment of NY GOL 5-335." In their notice of removal, defendants confirm that "[d]efendant Rawlings has handled subrogation and reimbursement claims totaling more than $5 million with respect to New York insureds covered by fully insured plans since the adoption of NY GOL § 5-335."

CAFA also contains express exceptions to jurisdiction. For example, federal jurisdiction would not exist here if (1) over two-thirds of the proposed plaintiffs were citizens of New York; (2) at least one defendant from whom "significant relief is sought" was a citizen of New York; (3) "principal injuries resulting from the alleged conduct . . . were incurred in" New York; and (4) "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4). The Second Circuit has declined to reach the issue of who bears the burden with regard to CAFA exceptions. *See Blockbuster*, 472 F.3d at 58. Here, plaintiffs

have not claimed that any CAFA exceptions apply (or contested CAFA jurisdiction at all), so as in *Blockbuster*, these "exceptions are not before us, and therefore we need not comment" further. *Id.*

Because CAFA supplies a basis for federal subject-matter jurisdiction, we reach defendants' express preemption defense in addition to their complete preemption argument. We discuss both forms of preemption below.

## II.    Express Preemption

ERISA expressly preempts any state law that "relate[s] to any employee benefit plan," but not if that law "regulates insurance." ERISA § 514(a)-(b), 29 U.S.C. § 1144(a)-(b). It is undisputed that N.Y. Gen. Oblig. Law § 5-335 "relate[s] to" ERISA plans, but we conclude that it is "saved" from express preemption as a law that "regulates insurance." A law "regulates insurance" under this savings clause if it (1) is "specifically directed toward entities engaged in insurance," and (2) "substantially affect[s] the risk pooling arrangement between the insurer and the insured." *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003).

The district court's holding that N.Y. Gen. Oblig. Law § 5-335 does not fall within this savings clause is contrary to the Supreme Court's decision in *FMC Corp. v. Holliday*, 498 U.S. 52 (1990). *FMC* concerned a Pennsylvania antisubrogation statute similar in relevant respects to the one at issue here, and the Supreme Court stated that "[t]here is *no dispute* that the Pennsylvania law falls within ERISA's insurance saving clause" and that such laws "are 'saved'" from express preemption. *Id.* at 60-61 (emphasis added).

Here, the district court concluded that section 5-335 is not "specifically directed" at insurance because it regulates not only insurers but also all other "benefit provider[s]," "including self-funded employer plans."[5] *Wurtz*, 933 F. Supp. 2d at 503. But the

---

[5] Under N.Y. Gen. Oblig. Law § 5-101, "'benefit provider' means any insurer, health maintenance organization, health benefit plan, preferred provider organization, employee benefit plan or other entity which

antisubrogation statute at issue in *FMC* was also broadly addressed to "[a]ny program, group contract or other arrangement" for benefit payments, not just insurance companies. 498 U.S. at 55. Indeed, the specific issue in *FMC* related to the law's application to a self-funded plan.[6] Nonetheless, the Supreme Court recognized that the law "does not merely have an impact on the insurance industry; it is aimed at it." *Id.* at 61.

The district court also concluded that section 5-335 does not "substantially affect the risk pooling arrangement between the insurer and the insured" because the law "only applies to a subset of benefit providers, specifically, those without a statutory right of reimbursement and who do not intervene in underlying third party actions in which the third party settles." *Wurtz*, 933 F. Supp. 2d at 505. But the test is not whether the law substantially affects the whole insurance market—the test is whether the law substantially affects how risk is shared when it applies. For example, even though only a subset of insureds suffer from mental illness, the Supreme Court has held that a law requiring minimum mental health care benefits regulates insurance and is thus saved from preemption. *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 743 (1985). Section 5-335 requires that insurers bear the risk of medical expenses whether or not the insured settles or goes to trial, and it thus substantially affects risk pooling between insurers and insureds.

---

provides for payment or reimbursement of health care expenses, health care services, disability payments, lost wage payments or any other benefits under a policy of insurance or contract with an individual or group."

[6] The issue in *FMC* was the effect of the so-called "deemer clause" of ERISA § 514(b)(2)(B), which exempts self-funded plans from the savings clause. The Supreme Court held that the deemer clause did not cause preemption of the entire statute in all cases, but only as applied to self-funded plans. 498 U.S. at 61. Under *FMC*, the applicability of N.Y. Gen. Oblig. Law § 5-335 to self-funded plans would only mean that the law is preempted as applied to those plans (which is not the case here because the plans at issue are insured), not that the law is not "specifically directed" at insurance.

Because N.Y. Gen. Oblig. Law § 5-335 is specifically directed toward insurers and substantially affects risk pooling between insurers and insureds, we conclude that it is saved from express preemption under ERISA § 514 as a law that regulates insurance.

## III.    Complete Preemption

The district court held that plaintiffs' claims are completely preempted under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which allows an ERISA participant to bring an action to receive or to clarify his plan benefits. In *Davila*, 542 U.S. at 210, the Supreme Court established a two-part test for determining whether a claim is completely preempted by § 502(a)(1)(B). As we have explained,

> [under *Davila*], claims are completely preempted by ERISA if they are brought (i) by "an individual [who] at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)," and (ii) under circumstances in which "there is no other independent legal duty that is implicated by a defendant's actions."

*Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 328 (2d Cir. 2011) (footnote omitted) (quoting *Davila*, 542 U.S. at 210). State law claims are completely preempted only if both parts of this test are satisfied. *Id.* In this case, plaintiffs' claims under N.Y. Gen. Oblig. Law § 5-335 satisfy neither part of the *Davila* test.

### A.    *Davila* Part One

In *Montefiore*, we "expressly disaggregate[ed] the first prong of *Davila*": "First, we consider whether the plaintiff is the *type* of party that can bring a claim pursuant to § 502(a)(1)(B); and second, we consider whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)." *Montefiore*, 642 F.3d at 328. In this case, it is undisputed that the plaintiffs are the type of party that can bring a claim pursuant to § 502(a)(1)(B). The only issue under the first part of the *Davila* test is thus whether plaintiffs' claims—to prevent defendants from asserting subrogation claims against plaintiffs' tort

recoveries in settlement—can be construed as colorable claims for benefits under § 502(a)(1)(B). We conclude that they cannot.

ERISA § 502(a)(1)(B) allows a plaintiff "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." The claims in plaintiffs' complaint seek to do none of these things. Plaintiffs do not contend that they have a right to keep their tort settlements "under the terms of [their] plan[s]"—rather, they contend that they have a right to keep their tort settlements under N.Y. Gen. Oblig. Law § 5-335. They also do not seek to "enforce" or "clarify" their rights "under the terms of [their] plan[s]" because the state right they seek to enforce—to be free from subrogation—is not provided by their plans. Indeed, the terms of plaintiffs' ERISA plans are irrelevant to their claims. Plaintiffs' claims are thus unlike the claims for benefits that were held completely preempted in *Davila*, for which "the wording of the plans [was] certainly material to [the] state causes of action." 542 U.S. at 215.[7] As plaintiffs explain, they "have already received all the benefits they were due in the form of medical expense coverage, and make no claim for any more." Pls.' Reply Br. 6.

The district court held that plaintiffs' claims can be construed as claims for benefits under ERISA § 502(a)(1)(B) because they "effectively seek to cut off defendants' reimbursement rights under the Plans." *Wurtz*, 933 F. Supp. 2d at 493. The district court reasoned that the claims are "really about [plaintiffs'] right to *keep* the

---

[7] The *Davila* plaintiffs "complain[ed] only about denials of coverage promised under the terms of ERISA-regulated employee benefit plans," arguing that they were entitled to additional benefits under a state law that imposed a duty to "exercise ordinary care when making health treatment decisions." 542 U.S. at 211-12. However, the state law made clear that "a managed care entity could not be subject to liability under the [state law] if it denied coverage for any treatment not covered by the health care plan that it was administering," so "interpretation of the terms of [plaintiffs'] benefit plans form[ed] an essential part of their [state law] claim." *Id.* at 213.

monetary benefits received from defendants under their ERISA-governed plans; this triggers issues concerning their rights and ability to recover (and/or retain) benefits under the Plans, and accordingly, brings ERISA § 502(a)(1)(B) directly into play." *Id.* at 495.

This expansive interpretation of complete preemption ignores the fact that plaintiffs' claims are based on a state law that regulates insurance and are not based on the terms of their plans. As a result, state law does not impermissibly expand the exclusive remedies provided by ERISA § 502(a). Under ERISA § 514(a)-(b), state laws that "relate to" ERISA plans are expressly preempted, but not if they "regulate[] insurance." 29 U.S.C. § 1144(a)-(b). Based on this "insurance saving clause," the Supreme Court has held that state statutes regulating insurance that nonetheless affect ERISA benefits are not expressly preempted, with no hint that claims under these statutes might still be completely preempted and thus unable to be adjudicated under those state laws when they do not expand the remedies available for beneficiaries for claims based on the terms of their plans. *See Rush Prudential HMO Inc. v. Moran*, 536 U.S. 355, 377-79 (2002); *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 366-67 (1999).

### B.    *Davila* Part 2

Plaintiffs' claims under N.Y. Gen. Oblig. Law § 5-335 also do not satisfy the second part of the *Davila* test—that there be "no other independent legal duty that is implicated by [the] defendant[s'] actions." *Davila*, 542 U.S. at 210. The district court held that plaintiffs' claims implicate no independent legal duty because their claims are "inextricably intertwined with the interpretation of Plan coverage and benefits." *Wurtz*, 933 F. Supp. 2d at 498 (quoting *Montefiore*, 642 F.3d at 332) (internal quotation marks omitted). But the independent legal duty arises from section 5-335, which prohibits defendants from seeking subrogation or reimbursement from settling parties. The duty is independent because it is unrelated to whatever plaintiffs' ERISA plans provide about reimbursement.

In *Stevenson*, 609 F.3d at 60-61, this court held that the plaintiff's state law contract and unjust enrichment claims that "reference[d] various benefit plans" were not completely preempted because they arose from a "separate promise" that did "not require a court to review the propriety of an administrator's or employer's determination of benefits." Similarly here, while defendants' reimbursement claims relate to plaintiffs' plans, this is not the test for complete preemption. Plaintiffs' claims do not derive from their plans or require investigation into the terms of their plans; rather, they derive from N.Y. Gen. Oblig. Law § 5-335.

The district court also stated that section 5-335 could not be the basis of an independent legal duty because it does not apply "where there is a statutory right of reimbursement," N.Y. Gen. Oblig. Law § 5-335(a), and plaintiffs' plans contain a right of reimbursement that "is enforced by means of ERISA." *Wurtz*, 933 F. Supp. 2d at 499-500. However, "ERISA says nothing about subrogation provisions. ERISA neither requires a welfare plan to contain a subrogation clause nor does it bar such clauses or otherwise regulate their content." *Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Trust Co. of Sapulpa*, 130 F.3d 950, 958 (10th Cir. 1997) (quoting *Ryan ex rel. Capria-Ryan v. Fed. Express Corp.*, 78 F.3d 123, 127 (3d Cir. 1996)) (internal quotation marks omitted). Under the district court's reasoning, all contract language enforced by statute would become "statutory" language.

"The [*Davila*] test is conjunctive; a state-law cause of action is [completely] preempted only if both prongs of the test are satisfied." *Montefiore*, 642 F.3d at 328. Because plaintiffs' claims do not satisfy either part of the *Davila* test, we hold that they are not completely preempted by ERISA.

## C.    Other Circuits

We recognize that this result is in some tension with holdings of the Third, Fourth, and Fifth Circuits in similar antisubrogation cases, albeit decided before *Davila*. *See Arana v. Ochsner Health Plan*, 338 F.3d 433, 438 (5th Cir. 2003) (en banc) (holding that a claim under a Louisiana antisubrogation statute could be characterized as

a claim under ERISA § 502(a)(1)(B) because the plaintiff's "benefits are under something of a cloud, for [the insurer] is asserting a right to be reimbursed for the benefits it has paid to his account"); *Singh v. Prudential Health Care Plan, Inc.*, 335 F.3d 278, 291-92 (4th Cir. 2003) (holding a claim under a Maryland antisubrogation statute to be completely preempted)[8]; *see also Levine v. United Healthcare Corp.*, 402 F.3d 156, 163 (3d Cir. 2005) (following *Arana* and *Singh*).

As we have explained, however, the logic of *Arana*, *Singh*, and *Levine* would expand complete preemption to encompass state laws that regulate insurance and that do not impermissibly expand the exclusive remedies provided by ERISA § 502(a).

We are more persuaded by the reasoning of the Ninth Circuit in *Marin General Hospital v. Modesto & Empire Traction Co.*, 581 F.3d 941 (9th Cir. 2009), which was decided after *Davila*. In that case, a hospital sued an ERISA plan administrator in state court based on breach of an oral contract to cover 90% of an ERISA participant's expenses, and the administrator removed to federal court, arguing that the claims were completely preempted. *Id.* at 944. The Ninth Circuit disagreed. The claims failed the first part of the *Davila* test: "The Hospital does not contend that it is owed this additional amount because it is owed under the patient's ERISA plan. Quite the opposite. The Hospital is claiming this amount precisely because it is not owed under the patient's ERISA plan." *Id.* at 947. And the claims additionally failed the second part of the *Davila* test in that they implicated the independent legal duty of state contract law. *Id.* at 950. The Ninth Circuit directed that the case be remanded to state court for lack of federal jurisdiction. *Id.* at 951.

Other circuits have similarly declined to expand complete preemption doctrine to allow removal of state law claims into

---

[8] The *Singh* Court did, however, conclude that the antisubrogation statute was *not* expressly preempted, noting that "[i]n *FMC Corp. v. Holliday*, the Supreme Court dealt precisely with the question of whether a State antisubrogation law was saved from preemption under § 514(b)(2)(A), and held that it was." 335 F.3d at 286. As explained above, we agree.

federal court simply because they implicate ERISA benefits. *See, e.g.,* *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 614 (6th Cir. 2013) (concluding that a state law claim for tortious interference with an ERISA plan is not completely preempted because "[n]obody needs to interpret the plan to determine whether th[e] duty [to not interfere] exists"); *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 531-32 (5th Cir. 2009) (concluding that claims implicating the *rate* of payment under the Texas Pay Prompt Act are not completely preempted because they do not duplicate ERISA claims); *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 597 (7th Cir. 2008) (concluding that claims by an ERISA beneficiary's assignee to recover plan benefits are not completely preempted because they "arise not from the plan or its terms, but from the alleged oral representations made by" the plan provider).

In the same vein, in this case plaintiffs are not claiming that they have a right to enjoin defendants from seeking reimbursement because of the terms of their ERISA plans. Rather, they claim that they have this right under N.Y. Gen. Oblig. Law § 5-335, which imposes an independent legal duty on defendants not to seek reimbursement of medical expenses from plaintiffs' tort settlements, regardless of what plaintiffs' ERISA plans say about reimbursement.

Allowing plaintiffs' state-law claims under section 5-335 to proceed will not disturb ERISA's goal of providing national uniformity. ERISA has strong preemptive provisions, the purpose of which are "to provide a uniform regulatory regime over employee benefit plans." *Davila*, 542 U.S. at 208. But "ERISA says nothing about subrogation provisions. ERISA neither requires a welfare plan to contain a subrogation clause nor does it bar such clauses or otherwise regulate their content." *Member Servs. Life Ins. Co.*, 130 F.3d at 958 (internal quotation marks omitted). *Cf. La. Health Serv. & Indem. Co. v. Rapides Healthcare Sys.*, 461 F.3d 529, 535 (5th Cir. 2006) (concluding, in the face of ERISA's "silen[ce] on the assignability of employee welfare benefits," that a Louisiana assignment statute—which gave hospitals a cause of action against insurers that did not honor benefit assignments made by patients to hospitals—was not

preempted by ERISA § 502(a)(1)(B)). Because ERISA is silent on subrogation, our decision does nothing to disturb ERISA's goal of national uniformity in employee benefit plan regulation.

## CONCLUSION

For the reasons stated above, we conclude that CAFA supplies a basis for federal subject-matter jurisdiction and that plaintiffs' claims are neither expressly nor completely preempted by ERISA. We VACATE the district court's judgment and REMAND for further proceedings on plaintiffs' claims.