21-2164-cv
Rivera-Zayas v. Our Lady of Consolation Geriatric Care Center

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of April, two thousand twenty-three.

PRESENT:
> JOHN M. WALKER, JR.,
> GERARD E. LYNCH,
> ALISON J. NATHAN,
> > *Circuit Judges.*

---

Vivian Rivera-Zayas, as the Proposed Administrator of the Estate of Ana Martinez, Deceased

> *Plaintiff-Appellee,*

v.                                                                                          21-2164-cv

Our Lady of Consolation Geriatric Care Center, Our Lady of Consolation Geriatric Care Center, DBA Our Lady of Consolation Nursing and Rehabilitative Care Center, Our Lady of Consolation Nursing and Rehabilitative Care Center,

> *Defendant-Appellants.*

---

FOR PLAINTIFF-APPELLEE:                    ADAM R. PULVER (Scott L.
                                           Nelson, Allison M. Zieve, *on*

the brief), Public Citizen Litigation Group, Washington, DC (Brett R. Leitner, Leitner Varughese Warywoda PLLC, Melville, NY, *on the brief*).

FOR DEFENDANT-APPELLANTS:
ANDREW D. SILVERMAN, Orrick, Herrington & Sutcliffe LLP, New York, NY (Megan Alice Lawless, Dylan Braverman, Charles K. Faillace, Vigorito, Barker, Patterson, Nichols & Porter, LLP, New York, NY, *on the brief*).

FOR AMICUS CURIAE ATLANTIC LEGAL FOUNDATION:
Lawrence S. Ebner, Capital Atlantic Legal Foundation, Washington, DC; Brian T. Goldman, Holwell Shuster & Goldberg LLP, New York, NY.

FOR AMICUS CURIAE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA:
Tara S. Morrissey, Tyler S. Badgley, U.S. Chamber Litigation Center, Washington, DC; Jeffrey S. Bucholtz, Alexander Kazam, King & Spalding LLP, Washington, DC.

FOR AMICI CURIAE AMERICAN MEDICAL

2

ASSOCIATION AND MEDICAL SOCIETY
OF THE STATE OF NEW YORK:

Erin G. Sutton, American Medical Association, Chicago, IL.

FOR AMICUS CURIAE DRI, INC.:

William M. Jay, Andrew Kim, Goodwin Procter LLP, Washington, DC.

FOR AMICI CURIAE AARP, AARP
FOUNDATION, JUSTICE IN AGING:

Maame Gyamfi, William Alvarado Rivera, Kelly Bagby, AARP Foundation Litigation, Washington, DC; Eric Carlson, Justice in Aging, Los Angeles, CA.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Garaufis, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendants-Appellants Our Lady of Consolation Geriatric Care Center and related entities (collectively OLOC) appeal from the district court's grant of Plaintiff-Appellee's motion to remand to state court for lack of subject-matter jurisdiction. This appeal concerns whether the district court had jurisdiction to adjudicate Plaintiff's claims arising from infection control procedures employed by Defendants in early 2020, during the onset of the COVID-19 pandemic. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**BACKGROUND**

On January 8, 2020, Ana Martinez was admitted to OLOC, a nursing home. Plaintiff Vivian Rivera-Zayas, Martinez's daughter, alleges that OLOC had a lengthy history of employing poor infection control measures that continued through the onset of the COVID-19 pandemic in early 2020. On March 21, 2020, Martinez developed a cough and fever, and by March 25, OLOC suspected that Martinez might have COVID-19. On March 30, 2020, Martinez's condition deteriorated, and she was taken to the hospital, where she died on April 1, 2020.

In June 2020, Rivera-Zayas, as administrator of Martinez's estate, filed suit against OLOC in New York Supreme Court, Kings County, bringing claims of negligence, gross negligence, negligent supervision, wrongful death, and violations of the New York Public Health Law. OLOC then removed the case to the Eastern District of New York. Plaintiff moved to remand the case to state court, arguing that there was no basis for a federal court to exercise subject-matter jurisdiction over her claims. In August 2021, the district court granted Plaintiff's motion and ordered the case remanded. *Rivera-Zayas v. Our Lady of Consolation Geriatric Care Ctr.*, No. 20-CV-5153 (NGG) (JMW), 2021 WL 3549878 (E.D.N.Y. Aug. 11, 2021). This appeal followed.[1]

## DISCUSSION

This appeal concerns whether this lawsuit was properly removed to federal court. Under 28 U.S.C. § 1441(a), a state court defendant may remove "any civil action . . . of which the district

---

[1] Generally, this Court lacks jurisdiction over an appeal from an order remanding a case to state court for lack of removal jurisdiction. *See* 28 U.S.C. § 1447(d). There is an exception, however, for removals pursuant to the federal officer removal statute. *Id.*; *see id.* § 1442. And when, as here, such a ground for removal is asserted, this court has jurisdiction to address additional bases for removal rejected by the district court. *See BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1538 (2021).

4

courts of the United States have original jurisdiction." Accordingly, when, as here, there is no "diversity of citizenship, federal-question jurisdiction is required." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).[2] In addition, 28 U.S.C. § 1442(a)(1) provides that "any officer (or any person acting under that officer) of the United States or of any agency thereof" may remove a state court suit brought against them "for or relating to any act under color of such office." The complaint here pleads only state law claims. Nevertheless, OLOC contends that removal was proper because (1) the Public Readiness and Emergency Preparedness (PREP) Act completely preempts Plaintiff's claims; (2) Plaintiff's claims arise under federal law because they necessarily raise a substantial and disputed federal issue under the test articulated in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005); and (3) OLOC "acted under" a federal officer when engaged in the conduct complained of. The district court concluded that it lacked subject-matter jurisdiction and remanded the case to state court.

"We review *de novo* the district court's determination that it lacked subject matter jurisdiction and its decision to remand." *Teamsters Loc. 404 Health Servs. & Ins. Plan v. King Pharms., Inc.*, 906 F.3d 260, 264 (2d Cir. 2018). Because we agree that the district court lacked jurisdiction, we affirm.

## I.     Complete Preemption

OLOC's first argument is that the PREP Act completely preempts Plaintiff's state law claims. "Under the complete-preemption doctrine, certain federal statutes are construed to have such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal

---

[2] Unless otherwise indicated, all internal citations, quotation marks, and alterations are omitted.

statute are transformed, for jurisdictional purposes, into federal claims—i.e., completely preempted." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005). "In concluding that a claim is completely preempted, a federal court finds that Congress desired not just to provide a federal defense to a state law claim but also to replace the state law claim with a federal law claim and thereby give the defendant the ability to seek adjudication of the claim in federal court." *Wurtz v. Rawlings Co.*, 761 F.3d 232, 238 (2d Cir. 2014). "[W]hen a claim is completely preempted, the law governing the complaint is exclusively federal." *Id.* at 238–39.

OLOC is not the first medical provider or congregate care facility to argue that the PREP Act completely preempts state law claims of deficient medical care following the onset of the COVID-19 pandemic. In *Solomon v. St. Joseph Hospital*, we recently considered—and rejected—each of the jurisdictional arguments OLOC raises here. 62 F.4th 54 (2d Cir. 2023). We explained that "[t]he PREP Act provides broad immunity 'from suit and liability under Federal and state law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure' during a public-health emergency." *Id.* at 58 (quoting 42 U.S.C. § 247d-6d(a)(1)). [3] But we also explained that "nothing in the PREP Act suggests that Congress was attempting . . . to eliminate state-law causes of action for non-immunized claims." *Id.* at 62.

The plaintiffs in *Solomon* pled state-law claims for malpractice, negligence, and gross negligence. *Id.* at 61. Like OLOC here, the defendant hospital argued that the PREP Act

---

[3] Effective February 4, 2020, the Secretary of Health and Human Services declared "COVID-19 . . . a public health emergency" and defined "covered countermeasures" as "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19." Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,202 (Mar. 17, 2020).

completely preempted those claims. We disagreed. "To establish complete preemption, Defendants must first show that the PREP Act preempts state law and substitutes a federal remedy for that law, thereby creating an exclusive federal cause of action. Once this is established, the question becomes whether [the] state-law claims are within the scope of the federal cause of action. If so, the state-law claims are completely preempted." *Id.* at 60–61. We held that the plaintiff's claims were not completely preempted, because the only exclusive federal cause of action established by the PREP Act was for willful misconduct, as defined in 42 U.S.C. § 247d-6d(c). *See Solomon*, 62 F.4th at 61. "[C]laims for medical malpractice, negligence, and gross negligence are plainly not 'within the scope' of willful misconduct," because "[n]egligence and gross negligence do not rise to the level of willful misconduct, which the PREP Act defines as 'a standard for liability that is more stringent than a standard of negligence *in any form*,'" and "under New York law, medical malpractice requires only a deviation from the community standards of practice that proximately caused the injuries," which "is more relaxed than the showing required for willful misconduct." *Id.* (quoting 42 U.S.C. § 247d-6d(c)(1)(B)).

*Solomon*'s holding forecloses OLOC's complete preemption arguments here. OLOC attempts to distinguish *Solomon* by pointing to allegations in the complaint that its "conduct was 'willful' and 'knowing', and that OLOC 'acted in so careless a manner as to show complete disregard for the rights and safety of others', 'acted or failed to act knowing that their conduct would probably result in injury or damage' and 'acted in so reckless a manner or failed to act in circumstances where an act was clearly required, so as to indicate disregard of the consequences of their actions or inactions.'" OLOC Supp. Br. 2. But these allegations all support Plaintiff's claim of gross negligence, which *Solomon* held was outside the scope of the PREP Act's cause of

7

action for willful misconduct. 62 F.4th at 60–61; *see also id.* at 61 n.3 ("[The] statutory language specifies that no form of negligence can constitute willful misconduct.").

Accordingly, as in *Solomon*, we hold that the PREP Act does not completely preempt Plaintiff's claims.

## II. "Arising Under" Jurisdiction

In addition to the complete preemption doctrine, OLOC invokes an alternative theory of federal question jurisdiction. Under 28 U.S.C. § 1331, federal courts have subject-matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." "[E]ven where a claim finds its origins in state rather than federal law," "arising under" jurisdiction still lies in "a special and small category of cases" in which the federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 313–14). OLOC argues that Plaintiff's claims fall within this "special and small category of cases."

We disagree. Here, as in *Solomon*, the "complaint raises claims under New York law and does not, on its face, raise questions of federal law," and while "Defendants have sought to avail themselves of the immunity granted under the PREP Act, our inquiry must be unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." 62 F.4th at 64. Accordingly, no federal issue is necessarily raised, so OLOC's argument fails at the first step of the analysis.

OLOC's effort to distinguish *Solomon* on this point is unavailing. Defendants argue only

8

that Plaintiff's complaint here "plead[s] a colorable claim under the PREP Act for willful misconduct." OLOC Supp. Br. 4. In other words, OLOC merely rehashes the complete preemption argument we rejected above.

Accordingly, we hold that Plaintiff's claims do not arise under federal law under the test articulated in *Grable* and *Gunn*.

## III.    Federal Officer Removal

Finally, OLOC invokes the federal officer removal statute. To do so, "a defendant who is not himself a federal officer must demonstrate that (1) the defendant is a person under the statute, (2) the defendant acted under color of federal office, and (3) the defendant has a colorable federal defense." *Agyin v. Razmzan*, 986 F.3d 168, 174 (2d Cir. 2021). With respect to the second element, "the word 'under' must refer to . . . a relationship that involves acting in a certain capacity, considered in relation to one holding a superior position or office," *i.e.*, a relationship that "involves subjection, guidance, or control." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 151 (2007). "In addition, . . . the private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Id.* at 152. "[T]he help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law." *Id*.

Here, too, *Solomon* forecloses OLOC's argument. In *Solomon*, we explained that "Defendants do not 'act under' a federal officer simply because they operate in a heavily regulated industry," and that "Defendants' role during the COVID-19 pandemic has nothing to do with whether they were 'acting under' a federal officer," because "[i]t cannot be that the federal government's mere designation of an industry as important—or even critical—is sufficient to

9

federalize an entity's operations and confer federal jurisdiction." 62 F.4th at 63. OLOC's federal officer arguments fall short for the same reasons. While OLOC emphasizes the important role played by congregate care facilities in the early days of the COVID-19 pandemic, the government directives they cite ultimately consist of guidance and regulations, which do not suffice to establish the requisite "special relationship" to find they acted under federal officers within the meaning of the statute. *Watson*, 551 U.S. at 156–57 (emphasizing the absence of "any delegation of legal authority" or "evidence of any contract, any payment, any employer/employee relationship, or any principal/agent arrangement" in holding federal officer removal did not apply).

Accordingly, we hold that the federal officer removal statute does not apply.

\* \* \*

We have considered Appellants' remaining arguments and find them to be without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10